# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | | |
|---|---|---|
| KELVIN NASH, | ) | |
| Plaintiff, | ) | |
| VS. | ) | No. 2:17-cv-02183-JDT-cgc |
| ARAMARK, ET AL., | ) | |
| Defendants. | ) | |

## ORDER DISMISSING COMPLAINT,
## CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
## AND DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

On February 16, 2017, Plaintiff Kelvin Nash, who was incarcerated at the Mark Luttrell Transition Center (MLTC) in Memphis, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 in the U.S. District Court for the Middle District of Tennessee. (ECF No. 1.) United States District Judge Aleta A. Trauger subsequently directed Nash to pay the $400 filing fee or submit an application to proceed *in forma pauperis*. (ECF No. 3.) On March 6, 2017, Nash paid the fee in full. (ECF No. 5.) Judge Trauger issued an order on March 17, 2017, transferring the case to this district because the facts of Nash's lawsuit relate to his time as an inmate at the Shelby County Division of Corrections in Memphis, Tennessee. (ECF No. 8.) Nash twice moved for appointment of counsel, (ECF Nos. 12 & 14), and also moved for leave to proceed *in forma pauperis*. (ECF No. 15.) On February 13, 2018, the Court denied the motions for appointment of

counsel without prejudice and the motion to proceed *in forma pauperis* as moot. (ECF No. 17.) On June 28, 2018, Nash notified the Court that he had been released from the MLTC and provided his new address. (ECF No. 18.) The Clerk shall record the Defendants as Aramark; Shirley Hayslett, the manager for Aramark; the Shelby County Division of Corrections (SCDC); Joyce Wilson, who is identified as an SCDC grievance responder; and Shawn Farmer, the Grievance Department Representative for the SCDC.

Nash alleges he was a trustee while incarcerated at the SCDC and worked as a "rock man." (ECF No. 1 at PageID 12, 15.) On June 20, 2015, SCDC began contracting with Defendant Aramark to provide food services to inmates. (*Id.* at PageID 12, 14.) Nash states he did not receive the lunch to which he was entitled for three days, July 10 through 12, 2015. (*Id.* at PageID 15.) Officers at the SCDC notified Aramark that it had neglected to feed certain workers, and Nash grieved the issue "on several occasions." (*Id.*) Defendants Hayslett and Aramark allegedly agreed "to fix the problem numerous times" but still neglected to feed some workers, including Nash, or served ill prepared or spoiled food on occasion between July 12, 2015, and April 6, 2016. (*Id.* at PageID 12, 15.)

Nash alleges that Defendants Hayslett and Aramark "used Discrimination and retaliated many times due to Mr. Nash filing grievance forms." (*Id.* at PageID 15-16.) He alleges that as a trustee, he was entitled to double portions. (*Id.* at PageID 16.) Aramark, however, allegedly sent other trustee workers double portions but Nash "only . . . the essential amount," if it sent him anything at all. (*Id.*) Nash states that unspecified Aramark staff members who knew about his grievances "started being spiteful by sending missing food portions" and spilling drinks into his food. (*Id.*) Nash alleges that on February 19,

2

2016, he received and ate moldy bread in his lunch, which made him sick. (*Id.*) He allegedly again fell ill on April 1, 2016, after eating a sandwich containing "bad meat." (*Id.*) Nash asserts he informed prison officials about the spoiled food. (*Id.*)

Nash alleges he grieved the issues concerning his lunches more than twenty times but received only four responses. (*Id.*) He asserts that Defendants Wilson and Farmer failed to respond to his grievances or investigate the ongoing food problems with Aramark. (*Id.* at PageID 16-17.) On April 6, 2016, Nash was transferred to another facility while he had several open grievances and without being allowed to gather his personal property, including magazines, books, and shoes. (*Id.* at PageID 17.) Nash alleges that he had missing, inadequate, or spoiled lunches on at least eighty days between July 2015 and April 2016. (*Id.*) He states he has suffered physical pain from missing lunches or eating the spoiled ones, emotional pain and anguish, and decreased work ability. (*Id.* at PageID 17-18.)

Nash sues the Defendants in their official and individual capacities. (*Id.* at PageID 6, 11.) He asserts claims under the Eighth, First, and Fourteenth Amendments and under Tennessee law. (*Id.* at PageID 18-20.) He seeks compensatory, punitive, and nominal damages and an injunction "compelling defendant[s] Wilson, Farmer and Shelby County Division of Corrections to provide responses to turned in grievance forms" and to "in force" the problems. (*Id.* at PageID 20-21.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F.

App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Nash filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Nash's official-capacity claims against Defendant Hayslett are construed as claims against Aramark, which employed Hayslett. Nash alleges Aramark contracted with SCDC to provide food to SCDC employees. "A private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)). The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or that provide medical care or food services to prisoners. *Id.* at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001); *see also*

5

*Eads v. State of Tenn.*, No. 1:18-cv-00042, 2018 WL 4283030, at *9 (M.D. Tenn. Sept. 7, 2018); *Dotson v. Shelby Cnty.*, No. 13-2766-JDT-TMP, 2014 WL 3530820, at *13 (W.D. Tenn. July 15, 2014). To hold Aramark responsible, Nash "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights. *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011).

Nash alleges that Aramark adopted "procedures, practices or customs within [SCDC] that allowed, unusual punishment." (ECF No. 1 at PageID 18.) Nash, however, does not describe any of the alleged procedures, practices, or customs or show how the procedure or custom was the "moving force" behind the violation of his constitutional rights. He has, therefore, failed to state a claim against Aramark.

For the same reasons, Nash fails to state a claim against the SCDC or against Defendants Wilson and Farmer in their official capacities. Such claims are construed as claims against Shelby County. A municipality or county cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691-92; *Deaton v. Montgomery Co., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which

6

the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in original).

Nash fails to identify any policy or custom of Shelby County that led to the alleged violations of his constitutional rights. His unsupported statement that SCDC had "procedures, policies or customs . . . that allowed, unusual punishment" does not suffice to state a claim against Shelby County. *See Broyles v. Corr. Med. Servs., Inc.*, No. 08-1638, 2009 WL 3154241, at *2 (6th Cir. Jan. 23, 2009) (an inmate's "bare allegations of a custom or policy, unsupported by any evidence, are insufficient to establish entitlement to relief") (citing *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)); *see also Baxter v. Corizon Health Inc.*, No. 1:14-CV-1347-JDT-EGB, 2015 WL 5707062, at *5 (W.D. Tenn. Sept. 28, 2015) (listing cases).

Nash fails to state a claim against Defendants Wilson and Farmer in their individual capacities related to any grievances that may have gone unanswered. There is no inherent constitutional right to an effective prison grievance procedure. *See LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)). A § 1983 claim therefore cannot be premised on contentions that the grievance procedure was inadequate. Furthermore, a failure to take corrective action in response to an inmate grievance or complaint does not supply the necessary personal involvement for § 1983 liability. *See Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir.

2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation.").

Nash's remaining claims pertain only to Defendant Hayslett in her individual capacity. Nash's claims related to inadequate or spoiled lunches are analyzed under the Eighth Amendment. The Eighth Amendment prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 834; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005). The subjective component of an Eighth Amendment violation requires a prisoner to demonstrate that prison officials acted with the requisite intent, that is, that the officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215,1222 (6th Cir. 1997). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Thus, "the prison official must know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837-38.

Nash alleges that between July 2015 and April 2016 he received missing, inadequate, or spoiled lunches on at least eighty days. (ECF No. 1 at PageID 17.) Despite the general allegation that this caused him physical pain and suffering, (*id.*), Nash does not allege that the amount of food he was able to eat each day was nutritionally inadequate to

8

maintain his health. Furthermore, Nash specifically alleges that he became ill after eating spoiled food only twice, on February 19, 2016, (*id.* at PageID 16, 36), and again on April 1, 2016. (*Id.* at PageID 16, 40.) These occasional incidents do not rise to the level of a constitutional deprivation. *See Balcar v. Smith*, No. 17-5159, 2017 WL 3613479, at *2 (6th Cir. July 17, 2017) (alleged occasional receipt of contaminated food did not suffice to state Eighth Amendment claim); *Moore v. Curtis*, 68 F. App'x 561, 562 (6th Cir. 2003) (isolated deprivations of food do not violate the Eighth Amendment).

Even if Nash's allegations regarding his lunches were sufficient to establish the objective component of an Eighth Amendment violation, he also fails to establish the subjective component. Nash's only allegation regarding Defendant Hayslett's involvement is that Hayslett "[a]greed to fix the problem numerous times but never pursued the actual dilemma." (ECF No. 1 at PageID 15.) This allegation alone is insufficient to hold Hayslett personally responsible for the problems with Nash's lunches. Nash therefore fails to state an Eighth Amendment claim against Defendant Hayslett.

Nash also fails to state an individual-capacity claim against Defendant Hayslett for retaliation or discrimination. Claims of retaliation arise under the First Amendment. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005). A claim of retaliation has three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). "[T]he plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Nash is correct that filing grievances is protected conduct. *Hill*, 630 F.3d at 472. But the only adverse action Nash alleges is that he was given spoiled or inadequate lunches, and Nash does not allege that Hayslett was responsible for Nash receiving those lunches. He alleges only that unidentified Aramark "staff members" grew tried of his complaints and "started being spiteful." (ECF No. 1 at PageID 16.) Therefore, Nash's allegations against Hayslett do not state a claim for retaliation under the First Amendment.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1. "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. Of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir. 2006)).

Nash alleges that other inmate workers received the double portions to which he was entitled, but Nash received only single servings, if anything. However, Nash does not allege that Hayslett was personally responsible for the preferential treatment. Therefore,

10

the allegation that other workers sometimes received larger lunch portions than he did does not state a claim against Defendant Hayslett under the Equal Protection Clause.

To the extent Nash seeks an injunction, his request is moot because he is no longer incarcerated in Shelby County. *See Moore v. Curtis*, 68 F. App'x 561, 562 (6th Cir. 2003) (claims for declaratory and injunctive relief against prison staff moot when inmate transferred to another facility); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (same).

For all of the foregoing reasons, Nash's complaint is subject to dismissal in its entirety for failing to state a claim.

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that . . . amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court concludes that leave to amend is not warranted.

In conclusion, the Court DISMISSES Nash's complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Leave to amend is DENIED.

The Court must also consider whether Nash should be allowed to appeal this decision *in forma pauperis*, should he seek to do so. A non-prisoner desiring to proceed on appeal *in forma pauperis* must obtain pauper status under Federal Rule of Appellate Procedure 24(a). *See Callihan v. Schneider*, 178 F.3d 800, 803-04 (6th Cir. 1999). However, Rule 24(a)(3) provides that if a party was permitted to proceed *in forma pauperis* in the district court, he may also proceed on appeal *in forma pauperis* without further authorization unless the district court "certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis." If the district court denies pauper status, the party may file a motion to proceed *in forma pauperis* in the Court of Appeals. Fed. R. App. P. 24(a)(4)-(5).

The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the defendants, but has sufficient merit to support an appeal *in forma pauperis*. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

It is CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3) and Federal Rule of Appellate Procedure 24(a), that any appeal in this matter by Nash would not be taken in good faith. Leave to proceed on appeal *in forma pauperis* is, therefore, DENIED. Accordingly, if Nash files a notice of appeal, he must also pay the full $505 appellate filing fee or file a motion for leave to appeal *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Nash, this is the first dismissal of one of his cases as frivolous or for failure to state a claim. This strike shall take effect when judgment is entered. *See Coleman v. Tollefson*, 135 S. Ct. 1759, 1763-64 (2015).

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE